UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANDREW FRANCOEUR,

    Petitioner,

        v.                                           CIVIL ACTION NO. 25-12381-MPK[1]

WARDEN OF FEDERAL MEDICAL
CENTER DEVENS,

    Respondent.

MEMORANDUM AND ORDER ON
RESPONDENT'S MOTION TO DISMISS (#11.)

KELLEY, U.S.M.J.

I. Introduction.

On August 28, 2025, pro se petitioner Andrew Francoeur, an inmate at Federal Medical Center ("FMC") Devens, filed an emergency petition for a writ of habeas corpus under 28 U.S.C. § 2241. (#1.) The petition names the Warden of FMC Devens as Respondent and seeks judicial review of a prison term calculation made by the Federal Bureau of Prisons ("BOP") under the First Step Act ("FSA"). (#1 at 1.) Francoeur claims that the calculation "will result in his incarceration for longer than the law allows." *Id*. On August 29, 2025, this court ordered that Francoeur's petition be served, *see* #3, and on September 19, 2025, the Respondent moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (#11.) Francoeur has not opposed.

For reasons set out below, the Respondent's motion is allowed, and Francoeur's petition is dismissed.

---

[1] With the parties' consent, this case was assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#9.)

II. <u>Background.</u>

On September 6, 2023, Francoeur was sentenced by the United States District Court for the District of Connecticut to a term of thirty-three months incarceration following his convictions for unlawful possession of a firearm (Count I) and manufacturing and dealing in firearms without a license (Count II). (#1 ¶ 2); *see United States v. Francoeur,* Case No. 3:23-cr-63-VLB (D. Conn. Sept. 8, 2023), Docket No. 26, "Judgment in a Criminal Case." He arrived at FMC Devens, his designated BOP facility, on November 6, 2024. *See* #13, "Declaration of Jason Draper," ¶ 20.[2]

Francoeur's petition "challenges how his sentence is being calculated and credited by Respondent" under the FSA. (#1 ¶ 3.) To that end, Francoeur cites two decisions by the Respondent which he claims caused him to lose time credits that would have reduced his time in custody:

(1) the assignment of "120 Disallowed Programming Days to [his] FSA calculations for being in refusal status for his Family / Parenting Need as a result of reportedly not completing his SPARC-13 questionnaire assessments upon his arrival at F[M]C Devens"; and

(2) the assignment of "an additional 80 Disallowed Programming Days to [] his FSA calculations for being transferred out of BOP custody to attend a federal resentencing hearing." *Id.* ¶¶ 3-4.

---

[2] As described in his declaration in support of the Respondent's motion to dismiss, Draper serves as the Case Management Coordinator at FMC Devens and, in addition to other duties, oversees "[FSA] time credit eligibility[.]" (#13 ¶¶ 1-2.) "On a motion to dismiss, the court may properly consider four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint." *Sanborn v. Bowers*, 788 F. Supp. 3d 153, 156 n.1 (D. Mass. 2025) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). In deciding § 2241 petitions challenging prison term calculations, numerous courts in this district have applied this exception to consider supporting affidavits and applicable records submitted by BOP officials. *See, e.g., Walsh v. Boncher*, 652 F. Supp. 3d 161, 165 (D. Mass. 2023) (recognizing BOP program officer's supporting declaration and the BOP records accompanying it as being "part of the Rule 12(b)(6) record") (additional citation omitted); *Nygren v. Boncher*, 578 F. Supp. 3d 146, 149 n.1 (D. Mass. 2021)). Francoeur has not challenged the authenticity of the Draper declaration or the BOP records accompanying it, and, in any event, the court finds that they are central to his claim.

III. <u>Legal Standard.</u>

A habeas corpus petition brought under 28 U.S.C. § 2241 is "'[t]he appropriate vehicle for a prisoner to challenge the calculation of [their] release date.'" *Walsh*, 652 F. Supp. 3d at 167 (quoting *Cook v. Spaulding*, 433 F. Supp. 3d 54, 57 (D. Mass. 2020)) (first alteration in original); *see Thornton v. Sabol,* 620 F. Supp. 2d 203, 206 (D. Mass. 2009). A motion to dismiss a habeas petition is evaluated under the same principles as those applied in other civil cases under Fed. R. Civ. P. 12(b)(6). *See Phillips v. Bowers,* 784 F. Supp. 3d 471, 473 (D. Mass. 2025) (quoting *Walsh*, 652 F. Supp. 3d at 164). Consequently, dismissal is appropriate if, after taking the petition's well-pleaded facts as true and allowing the petitioner the benefit of all reasonable inferences, "the petition fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Sanborn*, 788 F. Supp. 3d at 159 (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)) (additional citations omitted).

IV. <u>Discussion.</u>

  A. <u>The First Step Act – Generally.</u>

The FSA was enacted in 2018 "to evaluate the risk of prisoners reoffending and offer programming to discourage recidivism." *Phillips,* 784 F. Supp. 3d at 473 (citing 18 U.S.C. § 3632(a)). Through use of a "risk and needs assessment system,"[3] the Act allows inmate participation in "evidence-based recidivism reduction [("EBRR")] programming or productive activities" and provides, as an incentive to eligible prisoners who "successfully complete[]" such

---

[3] This system is used to determine, among other things, "the recidivism risk of each prisoner as part of the intake process" and "the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner" and to "assign each prisoner to such programming accordingly . . . based on the prisoner's specific criminogenic needs[.]" 18 U.S.C. § 3632(a)(1)-(8).

programming or activities,[4] corresponding "time credits" toward early release. 18 U.S.C. § 3632(a) and (d)(4)(A); *see* 18 U.S.C. § 3632(d)(4)(A)(i)-(ii) (explaining that "for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities[,]" eligible prisoners "(i) . . . shall earn 10 days of time credits" and (ii), for those determined by BOP "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, ha[ve] not increased their risk of recidivism, . . . an additional 5 days" of credits). Earned time credits are then "'applied toward time in prerelease custody or supervised release.'" *Walsh*, 652 F. Supp. 3d at 163 (quoting 18 U.S.C. § 3632(d)(4)(C)).

B. Failure to Exhaust Administrative Remedies.

The Respondent argues, as an initial matter, that Francoeur's petition should be dismissed because Francoeur failed to exhaust the administrative remedies available to him. *See* #12 at 8. Francoeur, who states that he began administrative proceedings on or around July 30, 2025, acknowledges that he did not wait for their conclusion before filing his petition "because doing so would be futile as it would extend resolution of this issue beyond [his] release date." (#1 ¶¶ 5-7.)

Ordinarily, an inmate must exhaust the administrative remedies available to him before bringing a petition under 28 U.S.C. § 2241. *Walsh*, 652 F. Supp. 3d at 167; *see Sanborn*, 788 F. Supp. 3d at 160 ("If a prisoner fails to exhaust all administrative remedies with the BOP, his § 2241 petition is subject to dismissal.") (citing *Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999)) (additional citations omitted); *see also Phillips,* 784 F. Supp. 3d at 474 (same).

1. The BOP Administrative Remedy Program.

BOP regulations require that federal inmates follow a multi-tier appeals process to successfully exhaust the administrative remedies available to them. *See* 28 C.F.R. § 542.10 et seq.

---

[4] *See* 18 U.S.C. § 3632(d)(4)(D) (defining "[i]neligible prisoners").

4

As part of that process, or "Administrative Remedy Program," an inmate must first

> attempt to resolve the complaint informally with the staff. 28 C.F.R. § 542.13(a). If an informal resolution cannot be found, an inmate must submit a formal written Administrative Remedy Request to the Warden through a 'BP-9' form within 20 days of the events which form the basis of the inmate's request. 28 C.F.R. § 542.14(a). An inmate dissatisfied with the Warden's response to the BP-9 request may submit an appeal to the Regional Director via a 'BP-10' form within 20 days of the date the Warden signed the BP-9 response form. 28 C.F.R. § 542.15(a). Lastly, an inmate dissatisfied with the Regional Director's response may appeal to the BOP's Office of General Counsel via a 'BP-11' form within 30 days of the date the Regional Director signed the response.

*Nygren*, 578 F. Supp. 3d at 152 (additional citations and quotations omitted); *see* #13 ¶¶ 32-36.

At each level of this system, the reviewing official has either twenty, thirty, or forty days to respond, with the opportunity to extend that response deadline by another twenty or thirty days, depending on the tier. *See* #13 ¶¶ 32-36. "No administrative remedy appeal is considered finally exhausted until it is considered by BOP's [Office of General Counsel]." *Id.* ¶ 36.

2. Futility.

Francoeur admits that he failed to follow these steps before filing his habeas petition. He claims that doing so would have been futile. Whether exhaustion would be futile, "and therefore excusable," is an issue with which a reviewing court "has 'some leeway.'" *Phillips,* 784 F. Supp. 3d at 474 (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 176 (1st Cir. 2016)). This inquiry requires a court to "balance a petitioner's interest in 'retaining prompt access to a federal judicial forum' against the BOP's 'institutional interests favoring exhaustion.'" *Id.* (weighing the issue of "undue prejudice" to the petitioner against the agency's expertise and its interests in having its "established remedial procedures" followed) (additional citations and quotations omitted). A petitioner's interests can be said to "'weigh heavily'" against mandating exhaustion when, among other things, "'requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action[.]'" *Walsh*, 652 F. Supp. 3d at

169 (quoting *Anversa*, 835 F.3d at 176) (additional citation omitted).

As explained in the Draper declaration, assuming Francoeur "continues to earn FSA credits at his current rate without interruption and does not lose credits," his anticipated release date is June 20, 2026, although it appears that BOP officials recently requested "to place [him] in prerelease custody pursuant to the Second Chance Act [("SCA")] sometime after March 22, 2026"—a date approximately ninety days before his anticipated release date. (#13 ¶ 31 & n.9); *see* #13-3, BOP "FSA Time Credit Assessment," at 3 (showing Francoeur's "FSA Conditional Release Date" as June 20, 2026, his "SCA Recommended Placement Days" as "90" and his "SCA Recommended Placement Date" as March 22, 2026); *see also* #1-1 at 3.

Given the nuances of these calculations,[5] this court cannot say whether the 200 EBRR programming days Francoeur claims should be credited to him—up to 100 days of corresponding time credits—could advance, for example, his anticipated "FSA Conditional Release Date" by 100 days from June 20, 2026 to March 12, 2026, and, in turn, accelerate his placement in prerelease custody (by application of his ninety "SCA Recommended Placement Days") to as early as December 12, 2025. If true,[6] then in dismissing Francoeur's petition without prejudice and considering the merits of any renewed petition only after he completes administrative proceedings, a court could decide the petition after the date Francoeur says he should be released. The court thus finds that Francoeur's interests "in retaining prompt access to a federal judicial forum" outweigh the "countervailing institutional interests favoring exhaustion." *Anversa*, 835 F.3d at

---

[5] *See* #13-3 at 3 (prefacing existing calculations with: "[t]hese dates can change if there are changes to one or more of the following: the individual[']s FSA risk, FSA opt-in/opt-out status, or best case SCA days").

[6] Francoeur does not specify exactly how any missing credits might reduce his sentence, or when his period of incarceration should end.

176; *compare Phillips*, 784 F. Supp. 3d at 474 (administrative adjudication of petitioner's claim was not unduly prejudicial, and exhaustion was not futile, where petitioner was "not due for release for several years, even if his sentence were reduced as requested" and therefore the relief he sought would "not be diminished during the time it t[ook] to exhaust his remedies"); *Bull v. Bowers*, 777 F. Supp. 3d 60, 63 (D. Mass. 2025) (same); *Nygren*, 578 F. Supp. 3d at 153-54 (rejecting petitioner's exhaustion waiver argument where, "at best[,]" his release date was still several years away and he "ha[d] time to complete the administrative process").

    C. Francoeur's Accumulation of FSA Time Credits.

Francoeur cites two instances where the Respondent failed to recognize his participation in EBRR programming and award him time credits. The Respondent counters that Francoeur's petition fails to state a claim because Francoeur was not on either occasion "'successfully participating'" in EBRR programming or productive activities, as required by regulations. (#12 at 1-2) (quoting 28 C.F.R. § 523.41(c)(1)). This court agrees.

    1. Failure to Complete SPARC-13 Assessment.

Francoeur first claims he did not earn time credits for the equivalent of 120 days of EBRR programming following his failure to "complet[e] his SPARC-13 questionnaire assessments upon his arrival at F[M]C Devens." (#1 ¶ 3.)

Consistent with the FSA's directive that a "risk and needs assessment system" be developed to assess and "determine the recidivism risk of each prisoner as part of the intake process," *see* 18 U.S.C. § 3632(a), the BOP designed the "Standardized Prisoner Assessment for Reduction in Criminality," or "SPARC-13," to "identif[y] thirteen needs areas which are dynamic

factors that can be targeted to reduce an inmate's risk of recidivism." (#13 ¶¶ 5-7.)[7] When an inmate arrives at a BOP facility, departments across the institution coordinate to "assess [that] prisoner's various needs areas." *Id.* ¶ 8. Using data from the SPARC-13 assessment, EBRR programming and productive activities are assigned "based on [the] [inmate's] identified risk and needs." *Id.* ¶¶ 9, 13.

According to the Respondent, Francoeur would have started to earn time credits as soon as he arrived at FMC Devens on November 6, 2024, but his failure to fully complete his SPARC-13 assessment placed him in "opt-out" status. (#12 at 7) (citing #13 ¶¶ 14, 20, 22.) The Respondent explains that Francoeur thus was unable to earn time credits because, under 28 C.F.R. § 523.41(c)(1), he was not "'successfully participating'" in either EBRR programming or productive activities under the FSA.[8] *See* #12 at 1-2, 5, 7.

The Respondent relies on the BOP's application of § 523.41(c), an agency regulation which addresses "[s]uccessful participation" in EBRR programming and productive activities ("PAs") for purposes of the FSA:

> (1) An eligible inmate must be 'successfully participating' in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs.
>
> (2) 'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.
>
> . . .
>
> (4) An eligible inmate . . . , will generally not be considered to be 'successfully participating' in EBRR Programs or PAs in situations including, but not

---

[7] *See id.* ¶ 7 (identifying these "needs areas" as: "Anger/Hostility; Antisocial Peers; Cognitions; Dyslexia; Education; Family/Parenting; Finance/Poverty; Medical; Mental Health; Recreation/Leisure/Fitness; Substance Abuse; Trauma; and Work")

[8] As explained in the Draper Declaration, "an inmate is considered 'opting out' if the inmate fails to complete any portion of the SPARC-13." (#13 ¶ 16 n.4) (citing #13-1 at 12).

8

>> limited to:
>>
>> . . .
>>
>> (v) 'Opting out' (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).
>
> (5)
>
>> . . .
>>
>> (iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate 'opts in' (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).

28 C.F.R. § 523.41(c). BOP Program Statement No. 5410.01, "First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)," in turn clarifies that

> . . . portions of the SPARC-13 assessment require the inmate's active participation. Failure on the inmate's part to complete the survey assessments timely will delay completion and negatively impact the inmate's ability to begin earning [time credits] as the inmate will be considered 'opted out,' and therefore is in non-earning status regardless of eligibility to earn [time credits].

(#13-1 at 12.)

The Respondent argues that Francoeur's placement in opt-out and "non-earning" status because he did not fully complete his SPARC-13 assessment was in accordance with the FSA. He claims that "BOP cannot assign EBRR or productive activities based on a prisoner's specific criminogenic needs—which is required by the FSA—until BOP is able to assess those needs by reviewing the completed self-assessment surveys." (#12 at 10).

For his part, Francoeur does not challenge the validity of § 523.41(c) or the implementation guidelines set out in Program Statement No. 5410.01. Rather, he maintains—contrary to the Respondent's assertion—that he successfully completed the SPARC-13 assessment given that his "other 12 FSA Needs were not also placed in refusal." (#1 ¶ 3.) A verified exhibit accompanying

9

the Draper declaration reveals, however, that although Francoeur took three of the SPARC-13 self-assessment surveys he was given, he did not fully complete the "Family-Parenting Survey" he took on November 12, 2024. (#12 at 7); *see* #13 ¶¶ 21-22 (citing #13-5, "Tru Family Survey Results for Inmate 53479-510," at 1-2).[9] Moreover, even though Francoeur was advised—and appears to have acknowledged—during his December 11, 2024 Initial Classification meeting that one of his needs assessments was missing,[10] it was not until a March 5, 2025 "Program Review" that his opt-out status "was discussed and resolved" and he began earning time credits the next day. (#13 ¶¶ 23-24.)

Francoeur does not claim in his petition that BOP failed to notify him of his incomplete self-assessment or that the agency did not give him the opportunity to remedy it. The "Tru Family Survey Results" attached to the Draper declaration plainly show that Francoeur's "Family-Parenting Survey" submissions were incomplete, and when properly-submitted documents "contradict an allegation in the complaint, the document trumps the allegation." *Nahass v. Harrison*, 207 F. Supp. 3d 96, 100 (D. Mass. 2016) (citing *Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

In sum, the court finds that the Respondent properly calculated Francoeur's time credits during this period under the FSA.

---

[9] Francoeur never answered Question #4, *see* #13-5 at 2, "FamilyQ4," despite a warning that all questions must be answered, *see* #13 ¶ 22.

[10] *See* #13-6 at 4, "Individualized Needs Plan – Initial Classification, FSA Assessment Summary" (noting a "missing initial assessment or prior assessment" and displaying underneath what appears to be Francoeur's signed and dated acknowledgment).

### 2. Transfer out of BOP Custody.

On March 13, 2025, a week after he began to earn FSA time credits, Francoeur was transferred pursuant to a writ of habeas corpus from FMC Devens to the Wyatt Detention Center ("Wyatt"), a non-BOP facility located in Rhode Island. (#13 ¶¶ 23-27.) He remained there, in the custody of the U.S. Marshals, until his return to FMC Devens on June 4, 2025. *Id.* ¶¶ 26-27. Francoeur asserts that during the time he was "transferred out of BOP custody" to Wyatt "to attend a federal resentencing hearing[,]" some eighty-three days, he should have continued to accrue EBRR programming days and additional time credits. (#1 ¶¶ 3-4.)

The Respondent argues that under § 523.41(c), Francoeur was unable to earn time credits for this period because he did not successfully participate in either EBRR programming or productive activities during his time at Wyatt. *See* #12 at 1-2, 11-12.

As explained above, and as provided in § 523.41(c)(2):

> 'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.

28 C.F.R. § 523.41(c)(2).

Francoeur does not allege that he participated in EBRR programming or productive activities during his time at Wyatt, much less those recommended by BOP based on his individualized risks and needs. *See* #12 at 7 (citing #13 ¶ 28); *see also* #13 ¶ 28 n.7 (observing that although Francoeur received certain medication-assisted treatment while in U.S. Marshals custody at Wyatt, simply receiving that treatment "does not qualify as an EBRR/PA").

As another court in this district concluded after considering a near-identical petition, "the FSA specifically contemplates that prisoners will participate in *BOP-assigned* EBRR programming, and there is nothing anomalous in defining 'successful participation' in a program

to mean actually taking part in the program." *Dunlap v. Warden FMC Devens,* Civil Action No. 24-11462-RGS, 2024 WL 5285006, at *10 (D. Mass. Dec. 13, 2024) (emphasis in original) (where petitioner "was unable to participate in BOP-assigned programming while housed at Wyatt" pursuant to a writ, "the BOP's application of its Rule to deny him [credits] for that time d[id] not conflict with the plain meaning of the FSA"), *report and recommendation adopted*, 2025 WL 35248 (D. Mass. Jan. 6, 2025) (acknowledging that "Congress left certain lacunae for the administering agency to fill. As pertinent here, the FSA leaves it to the BOP to implement rules for determining when an inmate is 'successful[ly] participating' in BOP-approved programming").

Accordingly, this court finds that the Respondent properly calculated Francoeur's time credits during this period under the FSA.

V. Conclusion.

For the above reasons, the Respondent's motion is allowed, and Francoeur's petition is dismissed. An order of dismissal will issue separately.


November 12, 2025                                /s/ M. Page Kelley
                                                 M. Page Kelley
                                                 United States Magistrate Judge